UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL SCHWARTZ,  Case No: 1:23-cv-608

      Plaintiff,  McFarland, J.
v.  Bowman, M.J.

BAMZ ENTERPRISES, LLC,

      Defendant.

**REPORT AND RECOMMENDATION**

On September 26, 2023, Plaintiff filed this case under the federal Telephone Consumer Protection Act ("TCPA") and related Ohio laws against Defendant Bamz Enterprises, LLC. Although Plaintiff initiated the case pro se, he is presently represented by counsel.[1] Following the conclusion of discovery, Defendant moved for summary judgment. For the following reasons, Defendant's motion should be GRANTED.

**I.  Standard of Review**

Under Rule 56, judgment will be granted if the evidence submitted demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48,

---

[1] The undersigned takes judicial notice that, including the above-captioned case, Plaintiff has filed at least seven TCPA cases in this district against various Defendants. In two cases, Plaintiff proceeds pro se; in three others, he proceeds through counsel. In this case and one other, Plaintiff file his suit pro se but subsequently retained counsel. *See, e.g.*, 1:24-cv-405-MWM (purported class action filed through counsel); 1:25-0012-MWM-SKB (pro se); 1:22-cv-581-JPH-SKB (pro se); 1:23-cv-374-KLL (pro se); 1:23-cv-375-JPH-SKB (initiated pro se, but subsequently retained counsel); 1:23-cv-443-JPH (purported class action filed through counsel).

106 S. Ct. 2505 (1986). After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986). "[A] court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the non-moving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). However, "[t]he 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to survive summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson.*, 477 U.S. at 249-50.

## II.   Undisputed Findings of Fact

Plaintiff resides in Hamilton County, Ohio. His cellular telephone number has been listed on the national Do Not Call Registry since May 24, 2021. (Schwartz Affidavit, Doc. 32-2, PageID 548). Defendant Bamz Enterprises LLC ("Bamz") is a limited liability company located in Lantana, Florida that does business under the registered trade name, "Living Well Screening." (Admitted Finding of Fact ¶ 1, Docs. 24-1, 32-1).

Defendant Bamz's primary business is providing telephonic customer service involving "kit chasing" for companies that provide at-home medical testing kits.[2] Specifically, Bamz ensures that the patient has received the test that was ordered, provides telephonic customer service to answer any questions that the patient may have

---

[B]Bamz briefly engaged in providing customer service for one non-healthcare client engaged in the solar energy business, including "setting up appointments for solar engineers to go out to the home…." (Doc. 20, Ross Dep., PageID 284-285)

about the use of the test kit or associated paperwork, and helps get the tests back to the laboratories and/or its clients. (Doc. 21, PageID 326).[3]

Plaintiff disputes the characterization of Bamz's business as limited to customer service calls, citing to evidence that Defendant has described itself as "a call center that specializes in kit fulfillment and patient advocacy," and an internet advertisement that suggested Bamz provides more general "call center" services including "sales." As discussed below, Bamz does not deny that it briefly sought to expand its business from customer service into telemarketing sales. But it denies that it ever succeeded in that effort, and further denies that it has ever engaged in telephonic solicitation or telemarketing of any kind.

Between January 31, 2023 and March 23, 2023, Plaintiff received six telemarketing calls on his cellular telephone from persons who identified themselves, respectively, as Ron Williams, Marsha, David, Ann, Maria, and Ann again. Each of the calls related to the sale of medical testing kits. (Doc. 19, Schwartz Depo, Exh. 6 (recorded calls); *see also* Schwartz Aff at ¶¶6-7). The first call on January 31, 2023 from Ron Williams related to the sale of a test kit for autoimmune and cancer genetic testing and screening. At the end of the first call, Plaintiff told the caller directly "do not call me anymore." (*See* Exh. 6 to Doc. 19, Schwartz Depo., filed manually on 10/15/24 ("Exh. 6")). The remaining five calls, which occurred from March 20 through March 23, 2023, each purported to offer "free COVID test kits through Medicare," and made allegedly false representations about

---

[3]Marinucci testified that in addition to its "kit chase" services, Defendant also offered "doc chase" services for one former client. But like kit chasing, doc chase services are a form of telephonic customer service rather than sales. He testified that "in doc chase, …you're sending the paperwork to the patient's primary care physician first, talking to their office and getting them to sign off on the test before the test gets sent to the patient." (Doc. 21, PageID 340-341).

3

sponsorship with Medicare. (Doc. 1, Complaint at ¶¶ 56-61; Doc. 19,. at 44, PageID 183; Exh. 6).

On each of the six calls, the caller claimed to be calling from "Living Well Screening." (Admitted Finding of Fact ¶ 7, Docs. 24-1, 32-1). Although Plaintiff never requested that Bamz call him, the name provided by the callers matches the Defendant's trade name. One of the callers claimed that "Living Well Screening" was located in Largo, Florida. (Doc. 1, ¶¶ 59, 63; Doc. 19, Exh. 6). The March 21, 2023 caller admitted to using an automatic telephone dialing system ("ATDS"). (*Id*., Admitted Finding of Fact ¶8). Based on the callers' statements that they were calling on behalf of "Living Well Screening," as well as several statements that the callers were located in Florida, Plaintiff filed suit against Defendant for making unauthorized calls. But Defendant denies that any of the callers were its employees or agents, and denies making any telemarketing calls to Plaintiff or to anyone else.

### III. Defendant's Motion for Summary Judgment

At a minimum, Plaintiff's causes of action under the TCPA require Plaintiff to prove that either Bamz or one of its agents actually made the unwanted calls at issue. Plaintiff's state law causes of action under the Ohio Consumer Sales Practices Act similarly require Plaintiff to prove that the calls originated from Defendant or its agents. In support of its denial that the calls originated from Bamz or its agents, Defendant points to the sworn testimony of its officers to that effect. Defendant asserts that any express or implied statements made by the callers regarding their identity or association with Defendant were false.

Much has changed since the TCPA was enacted in 1991, including the proliferation of cell phones. Legitimate telemarketers abide by TCPA rules. But illegitimate ones, including but not limited to scammers who employ the telephone as a phishing tool, do not. Technological advances permit scammers to alter the number from which the call appears to originate, making it more difficult to track. Additionally, unscrupulous telemarketers or scammers employ a variety of deceptive practices - including misrepresenting that they are affiliated with a government agency or a legitimate company or charity - in order to manipulate the person that they are calling.

Defendant seeks summary judgment on grounds that Plaintiff offers no *admissible* evidence to refute sworn testimony offered by Bamz that - notwithstanding the callers' statements that the calls were on behalf of "Living Well Screening" - Defendant did not actually make or authorize any of the calls in question. The only evidence that Plaintiff offers concerning the identity of the caller(s) are recorded statements made by the callers themselves (mostly in heavily accented English) that they were calling from "Living Well Screening." (Doc. 19, Exh. 6). Those recorded statements are clearly hearsay, insofar as they are out-of-court statements offered for the truth of the matter asserted. Pursuant to Rule 56(c)(1)(B), a party is entitled to summary judgment if it can show "that an adverse party cannot produce admissible evidence to support the fact." *Id*., (emphasis added).

Contrary to the hearsay statements of the callers, Defendant has presented admissible testimony that none of the six calls came from Bamz, that Bamz does not and has never had an ATDS, that Bamz has no agents or employees with the names of the identified callers, and that Bamz did not authorize any individual(s) to make such calls on its behalf. (*See*, *e.g.* Deposition of Bamz's CEO, Alan Ross ("CEO Dep."), Doc. 20,

PageID 283, 51:1-10; *id*., PageID 244-245; *id*., PageID 268, 36:10-12; *id*., PageID 266, 34:16-21); *see also* Doc. 20-1, PageID 310-311 (current and former employee list); CEO Affidavit, Doc. 23). In addition, Bamz has provided sworn testimony that Defendant has never permitted a third party to use its trade name except for the limited purpose of informing patients that "once your test kit gets mailed out, you'll be getting a phone call from Living Well Screening." (Doc. 20, PageID 257, 25-17-21). In Plaintiff's own deposition, he admitted that he has no admissible evidence to refute Defendant's claim "that someone is using Living Well Screening without their permission," and that Defendant is not responsible for the six calls that Plaintiff received in January through March 2023. (Doc. 19, PageID 191-193; *see also id*., PageID 199 (responding "[a]t this time, no," to question of whether Plaintiff has "any evidence to dispute" the Defendant's testimony that no one "on behalf of Bamz Enterprises authorized any call to you.").[4]

In response to Defendant's motion, Plaintiff suggests that his "circumstantial evidence" is sufficient to create a genuine issue of fact concerning the caller's identity and affiliation with Living Well Screening. According to Plaintiff, this case presents a "paradigmatic 'he said, she said' scenario requiring a trial to ascertain the truth," because only a jury may resolve credibility issues. (Doc. 32, PageID 528). Plaintiff complains that Bamz "conducted no investigation into who called Mr. Schwartz" beyond verifying that none of Defendant's own agents or employees were responsible for the calls. (Doc. 32, PageID 530). But it is Plaintiff's burden to prove his own case. Even Plaintiff concedes

---

[4]Plaintiff protests that this Court should not consider Plaintiff's sworn testimony, because Plaintiff was proceeding pro se at the time he gave his deposition, and because some of the testimony ostensibly relates to settlement negotiations. But the fact that Plaintiff elected to proceed pro se is not grounds for ignoring sworn testimony. And arguably, Plaintiff raised the issue of settlement voluntarily during the deposition and waived any objection to the line of questioning by failing to object. But even if any reference to settlement negotiations is excluded, Plaintiff's testimony that he has no evidence beyond the recorded calls themselves that Defendant or any of its agents made the calls remains admissible.

6

that "[n]either Bamz nor its CEO have any duty to investigate Plaintiff's claims for him." (Undisputed Finding ¶ 12, Docs. 24-1, 32-1).

In short, Defendant's motion should be granted. "The Court cannot consider evidence at summary judgment that a jury could not consider at trial." *Thomas v. Abercrombie & Fitch Co.*, 301 F.Supp.3d 749, 755 (E.D. Mich. 2018) (citing *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 681 (6th Cir. 2016)). Here, most of the evidence on which Plaintiff relies is inadmissible. And the scant admissible evidence that Plaintiff presents is so highly speculative that it fails to create a *genuine* issue of material fact on the issue of whether Defendant or its agents were responsible for the calls.

Plaintiff protests that if this Court were to grant summary judgment in Bamz's favor, then every defendant could win with a simple denial of liability. Not true. Rule 56(c) sets forth specific evidentiary burdens. A simple denial without supporting evidence is worthless. It was only after Bamz supported that denial with ample admissible evidence that it did not make or authorize any of the six calls that the burden shifted to Plaintiff to point to admissible evidence to the contrary. To deny summary judgment on the record presented would be to ignore the shifting burdens built into Rule 56 and allow a plaintiff to proceed to trial who lacks admissible evidence on the most critical element of his claim – here, the caller's identity.

Plaintiff contends that his "circumstantial" evidence is sufficient to present the issue of the caller's identity to the jury. Circumstantial evidence may create an issue of fact, but it still must be presented in a form that would be *admissible* in order to overcome summary judgment. Notably, in *Schwartz v. Hall Insurance Group, Inc.*, No. 1:23-cv-374-KLL, 2024 WL 4335509, at *5 (S.D. Ohio Sept. 27, 2024), this Court recently granted partial

7

summary judgment to a different defendant on another TCPA claim based on Plaintiff's failure to establish an exception to the hearsay rule or to present other admissible evidence on whether or not the defendant used an automatic telephone dialing system. Here, Plaintiff offers no admissible evidence at all that the callers who claimed to be calling on behalf of "Living Well Screening" (1) truthfully stated the name of the entity with which they were affiliated; or (2) were actually employed by, affiliated with, or authorized by Defendant Bamz or its agents to make the calls on Defendant's behalf.

Close examination of the circumstantial evidence on which Plaintiff relies illustrates the point. First, Plaintiff points to statements made by some callers that they were calling from somewhere in Florida – the state in which Bamz is located. But those hearsay statements may not be considered for the truth of the matter asserted any more than the callers' identification of their alleged employer as "Living Well Screening" may be considered. And Plaintiff points to no other evidence that the calls actually were from Florida, much less from Defendant's location in Lantana, Florida.[5]

Plaintiff next points to circumstantial evidence that Bamz "held itself out to be a 'call center,'" implying that the definition of a "call center" necessarily includes outgoing telemarketing sales calls.[6] (Doc. 28-4, Ross Dep., Exh. 4, PageID 473). Evidence that Defendant engages in any telephone solicitation at all *could* be relevant to the critical

---

[5] The undersigned also questions the probative value of a caller's statement that a call originated from Florida. Literally millions of businesses operate in Florida. And the only caller who identified a town or city identified one that differs from Defendant's location.

[6] The Merriam Webster dictionary defines a call center as "an office equipped to handle a large volume of telephone calls for an organization (such as a retailer, bank, or marketing firm) especially for taking orders or for providing customer service." *See* https://www.merriam-webster.com/dictionary/call%20center (accessed on April 30, 2025). In other words, while telemarketing calls may originate from a "call center," other call centers may accept only inbound calls to provide technical support, to take orders, or provide similar customer service. Even when a call center makes outbound calls, the calls may be limited to customer service. Here, Defendant describes itself as providing outgoing customer service calls from a "call center" but categorically denies making sales or marketing calls.

issue of whether Defendant called Plaintiff, although the probative value of such evidence would depend on its nature. For example, hypothetical evidence that a telemarketing company's primary business was to sell internet services on behalf of a single provider like AT&T would not necessarily be probative evidence that the same company engaged in telemarketing calls to sell COVID screening tests for an unrelated healthcare company.

Here, Plaintiff's evidence is even more tangential and speculative. Plaintiff points to evidence of Defendant's use of the phrase "call center" in marketing attempts to expand its business from kit chasing customer service calls to telemarketing sales calls. For example, a post by Defendant's CEO described Defendant as "a call center that specializes in kit fulfillment and patient advocacy." (*Id.*) *See also* Doc. 30-2, PageID 519-20 (advertisement describing Defendant as "a full-service call and fulfillment center" that "specialize[s] in HIPPA compliance in an effort to best facilitate the delivery of completed test kits to laboratories on behalf of our clients."). Focusing on the Defendant's limited use of the phrase "call center," and a single marketing reference to engaging in "sales,"[7] Plaintiff asks this Court to leap to the conclusion that Defendant not only succeeded in its efforts to expand its business to telemarketing sales, but actually secured clients on whose behalf it made the telemarketing sales calls in question. Apart from the utter lack of any evidence that would connect the limited marketing posts to the subject calls, however, Defendant has offered unrebutted sworn testimony that its marketing efforts bore no fruit. In other words, Defendant offers admissible evidence that – despite

---

[7] In a marketing-related post, one of Defendant's officer's wrote that Bamz "is a full-service call and fulfillment center" that "specialize[s] in HIPPA compliance in an effort to best facilitate the delivery of completed test kits to laboratories on behalf of our clients." The post concludes with this sentence: "Aside from our expertise in genetics we also engage in more typical call center activity *such as sales* and customer service." (Doc. 30-2, PageID 520 (emphasis added)).

advertising its ability to make sales calls during a period in 2022 or 2023 when its kit chase customer service business was slow, Defendant has never engaged in telephone solicitation of any kind, and does not "sell anything." (Doc. 21, Marinucci Dep., PageID 326-328; Doc. 20, Ross Dep. PageID 252-254); *see also id.*, PageID 247-248, 252 (testimony that Defendant provides customer service for its clients in the form of mailing out tests to patients, speaking to the patients on the phone regarding their receipt of the tests and how to follow test directions); *id.*, PageID 256-257, 263 (same). Defendant's evidence that Bamz never actually engaged in any telephone solicitation relating to test kits or anything else is unequivocal and unrebutted. (Doc. 20, PageID 254).[8]

The final piece of circumstantial evidence that Plaintiff asks this Court to consider is Bamz's admission that it authorized its "kit chase" and "doc chase" clients to use the name "Living Well Screening" to advise patients that they would receive a customer service call from "Living Well Screening" *after* those patients had ordered a medical test kit. Evidence that Defendant authorized the limited use of its trade name for a singular customer-service related purpose is not probative of whether it authorized use of its trade name to sell products. In light of the strong evidentiary support for Defendant's denials that it made or authorized the calls, Plaintiff's scant circumstantial evidence is insufficient to create an issue of fact on whether Defendant or its agents made the unsolicited telemarketing calls to Plaintiff (or to anyone else) in an effort to sell medical COVID test

---

[8]In an effort to make some connection, Plaintiff points out that Defendant has engaged in customer service calls relating to a cancer-related genetic test – a test kit that sounds similar to that being marketed in the January 2023 telemarketing call. Linking the general type of test kit is not enough given Defendant's unrebutted evidence that it never engaged in selling any test kits. Moreover, Plaintiff has no evidence that Defendant ever performed customer service "kit chasing" for COVID test kits – the subject matter of the remaining five calls.

10

kits (on five occasions in March 2023) or to sell a cancer screening test kit in January 2023.

Finally, a review of the case law cited by Defendant is highly persuasive. In *Lindenbaum v. Realgy, LLC*, 606 F.Supp.3d 732 (N.D. Ohio 2022), the court granted summary judgment because the defendant had offered admissible evidence that it did not make the subject calls, and the plaintiff presented no contrary admissible evidence on that central element of his TCPA claims. Plaintiff had opposed summary judgment on the basis of his own affidavit, which related that the callers identified themselves as associated with the defendant. But because the callers' statements about their identity were hearsay and were not admissible under any exception, the court rejected that evidence as insufficient to overcome summary judgment. *See also Worsham v. TSS Consulting Group, LLC*, 2023 WL 5016558, at *2 (M.D. Fla. Aug. 7, 2023) (granting summary judgment to defendant based on insufficiency of non-hearsay evidence to tie defendants to the phone calls at issue, holding that plaintiff's hearsay statement that callers stated that they worked for defendant was "simply …insufficient"); *accord Worsham v. TSS Consulting Group, LLC*, No. 6:18-cv-1692-LHP, 2023 WL 2664203, at *5 (M.D. Fla. March 28, 2023) (denying plaintiff's motion for summary judgment because "at most, Plaintiff's Affidavit demonstrates that on three occasions, the person Plaintiff spoke to during the unsolicited calls stated that he worked for TSS," which was "simply not enough" because statements were inadmissible hearsay). Despite being procedurally distinguishable, two additional cases also more generally support granting Defendant's motion. *See Baccari v. Carguard Admin., Inc.*, No. 22-cv-1952, 2022 (E.D. Pa. Aug. 8, 2022) (granting motion to dismiss where defendant presented factual attack to subject

matter jurisdiction, because plaintiff failed to respond to defendant's sworn factual assertions that it did not make or authorize calls); *Lucas v. DeSilva Automotive Servs.*, No. 1:16-cv-790-MRB-SKB, 2018 WL 2020744, at *8 (S.D. Ohio May 1, 2018) (granting defendants' motion to dismiss TCPA claims for lack of personal jurisdiction based on unrebutted evidence that defendants did not make calls, and plaintiff's concession that he did not know who initiated the call or the identity of the party on whose behalf the calls were based), R&R adopted at 2018 WL 1558866 (S.D. Ohio Mar. 31, 2019).

### IV. Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED THAT** Defendant's motion for summary judgment (Doc. 24) be **GRANTED**, and that this case be **CLOSED.**

                                              *s/Stephanie K. Bowman*
                                              Stephanie K. Bowman
                                              United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| MICHAEL SCHWARTZ, | Case No: 1:23-cv-608 |
| Plaintiff, | McFarland, J. |
| v. | Bowman, M.J. |
| BAMZ ENTERPRISES, LLC, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections must specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party must respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).